IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Michael E. Matthews, Carl Stephen Turner, Edward White and Robert Brown, | ) ) ) ) ) |
| Plaintiffs, | ) ) Civil Action No. _____ |
| vs. | ) ) |
| Buel, Inc. and CNTS Leasing, LLC, | ) **JURY TRIAL DEMANDED** ) |
| Defendants. | ) ) |

## COMPLAINT

Plaintiffs, for themselves and others similarly situated, bring this action against Defendants Buel, Inc. and CNTS Leasing, LLC and allege as follows:

### PARTIES

1. Defendant Buel, Inc. is a North Carolina corporation registered to do business in South Carolina and doing business from its office and truck yard in Chesnee, South Carolina. Buel, Inc. is a regulated as an authorized motor carrier providing interstate transportation of property under authority issued by the United States Department of Transportation.

2. Defendant CNTS Leasing, LLC is a North Carolina Limited Liability Company affiliated with Defendant Buel, Inc. which is registered to do business and is doing business from Buel, Inc.'s facility in Chesnee, South Carolina where it leases tractors to Buel, Inc. drivers under lease-purchase agreements.

3. Plaintiffs Michael E. Matthews, Carl Stephen Turner, Edward White and Robert Brown are or were truck drivers and owner-operators under contract to drive for Buel, Inc. in vehicles they owned or were leasing or purchasing from Defendant CNTS Leasing, LLC.

4. The other drivers that the representative Plaintiffs named in the caption either represent or seek to represent are or were truck drivers and owner-operators under contract to drive for Buel, Inc. either in vehicles they owned or in vehicles they were leasing or purchasing from Defendant CNTS Leasing, LLC.

## JURISDICTION AND VENUE

5. This action arises under 49 USC § 14102 and 14704 and 49 CFR Part 376 for violation of the laws and regulations under which owner-operators lease trucking equipment to authorized motor carriers for the transportation of property.

6. Jurisdiction of this matter is granted to this court by 28 USC § 1331 (federal question jurisdiction and 28 USC § 1337 (proceedings arising under an act of Congress regulating commerce).

7. Venue is proper in this district under 28 USC § 1391(b) because Defendants are headquartered in this district and because a substantial part of the events giving rise to the claims alleged herein occurred in this district.

## NATURE OF THE ACTION

8. Buel, Inc., transports property in interstate commerce in vehicles it leases from owner-operators (sometimes called "drivers" herein). Under Federal law, including 49 USC § 14102 and Federal regulations including 49 CFR § 376.11 and 12 (often called the "Truth-in-Leasing Regulations"), an "authorized motor carrier" like Buel may perform transportation services with trucks it does not own, but only if those trucks are covered by a written lease agreement. To satisfy that requirement the written lease agreement must be between the carrier and the owner or owner-operator of the truck, must grant the carrier "exclusive possession, control and use of the equipment" during the term of the lease and must meet the other requirements set forth in 49 CFR § 376.12.

9. Once such a lease is in place it is a violation of the first paragraph of 49 CFR § 376.12 for the carrier to fail to adhere to and perform the required provisions of the lease.

10. As specifically provided in 49 CFR § 376.12(c)(4), owner-operators in a contractual relationship with a carrier as provided in Section 376.11 an 12 may be either employees or independent contractors and the determination of their status is not affected by compliance with those regulations.

11. Buel, Inc. seeks to meet the requirement of a written lease with the owner-operators by incorporating equipment lease language into a contract with each owner-operator that it titles "Independent Contractor Agreement," (herein "ICA"). The Plaintiffs and members of the proposed class are or were parties to an ICA with Buel, Inc.

12. Plaintiffs and most other Buel drivers, in turn, have lease purchase agreements with Buel's affiliate CNTS Leasing LLC which are titled "CNTS Leasing, LLC Equipment Lease Agreement." To avoid confusion between this document, the ICA and with the regulatory requirement of a written equipment lease between Buel, Inc. and its drivers, this document is referred to herein as a lease -purchase agreement.

13. Upon information and belief, the terms of the ICA agreements each of the drivers signed are uniform with the exception that they offer three levels of compensation dependent on how long the driver has worked for Buel Inc., and whether the driver owns his own equipment or leases a tractor from CNTS.

14. This Complaint is brought because Buel, Inc. has engaged in a pattern and practice of violating its obligations to Plaintiffs and other similarly-situated drivers under 49 CFR §§ 376.11 and 12 in ways that significantly reduce their income as alleged in more detail below. Plaintiffs seek a monetary award for themselves and others similarly situated to compensate them for the damages they have sustained as a result of these violations.

15. Buel, Inc. has also engaged in a pattern and practice of violating its contracts with its owner-operators in numerous ways including treating them as employees rather than independent contractors. True independent contractor status was desired by Plaintiffs (and upon information and belief Buel's other similarly-situated drivers) because it would have allowed them to operate their businesses as they saw fit and to run the risks they chose to accept and earn the rewards of owning their own business. Plaintiffs seek monetary damages for themselves and others similarly situated as the result of these violations and, alternatively, seek the compensation and benefits, including overtime pay that the law would require Buel to pay employees.

**BACKGROUND**

16. Buel, Inc. operates approximately 95 trucks and generally describes itself as a "Dry & Refrigerated Truckload Carrier dedicated to providing high quality service at competitive rates between the Southeast and Northwest regions of the United States" with drivers typically being dispatched to haul several loads between the start of a trip or "round" and its completion.

17. All, or practically all, of Buel's transportation obligations to its customers are fulfilled by the group of owner-operators under contract to it. Under Buel's Independent Contractor Agreement these drivers accept responsibility for maintaining their tractors and paying the expense of operating that tractor. Buel, Inc. provides trailers and commits to use its best efforts to provide full-time work for the driver and his truck. The owner-operators are compensated with a defined percentage of the amount Buel, Inc. charges its customers for the loads hauled. They are also entitled to certain payments from Buel, Inc. for things like empty miles driven and for services such as loading or unloading, if those services are rendered, and for fuel surcharges.

18. Under the terms of the ICA the driver's compensation and expenses are to be computed and paid in a "settlement" when they return to Buel, Inc.'s Chesnee, South Carolina yard and submit the paperwork required by the ICA.

### COUNT I.

**(Unlawfully Concealing Rated Freight Bills or Similar Documentation and Unlawfully Failing to Pay Compensation as Specified in the Equipment Lease)**

19. Plaintiffs incorporate all prior paragraphs by reference.

20. Where a driver's compensation is a percentage of gross revenue (as is the case for Plaintiffs), the carrier is required to provide or make available to each driver at the time of settlement a copy of the rated freight bill or other documentation actually used in charging the customer by 49 CRF § 376(g). The requirement of providing this documentation is repeated in paragraphs 15 and 16 of ICA.

21. Defendants do not provide drivers with a rated freight bill or other required documentation at the time of settlement and refuses to allow inspection of rated freight bills and other documentation when the drivers so request.

22. In addition, on December 10, 2010, Buel, Inc.'s Chief Executive Officer Bob Watson, refused a request by counsel for several drivers to provide rated freight bills or other required documents needed to verify that the amounts reported in their settlement statements were accurate.

23. Upon information and belief, based on statements to drivers by customers of Defendant to the effect that the drivers were not getting their full share of the cost of the shipment and the drivers' general knowledge of industry billing rates and practices, Plaintiffs allege that Defendants have withheld money from their settlements that should have been paid to

them, concealed the fact that it was withholding that money from them and thereby damaged them.

24. Refusing to provide copies and allow inspection of rated freight bills and other documents needed to verify Plaintiffs' compensation and expenses and failing to pay Plaintiffs the amounts agreed upon violates the Truth-in-Leasing regulations and Plaintiffs are entitled to damages for those violations under 49 USC § 14704.

## COUNT II
### (Breach of Contract)

25. Plaintiffs incorporate all prior paragraphs by reference.

26. Defendants' actions in failing to provide required documentation and failing to pay Plaintiffs the amounts specified in their agreements are breaches of Defendants contracts with Plaintiffs and Plaintiffs are entitled to damages for those breaches.

## COUNT III
### (Unlawful Charge Back of Expenses)

27. Plaintiffs incorporate all prior paragraphs by reference.

28. Where a lease (in this case the ICA) clearly specifies items that are initially paid by the carrier but are the responsibility of the driver, 49 CFR § 376.12(g) allows a carrier to charge these items back to the driver at the time of settlement but only if details of how the amount of each item is computed is disclosed and copies of documents necessary to determine the validity of the charges are afforded to the driver.

29. Defendants' Independent Contractor Agreement paragraph 22 specifies that the amounts of charge backs will be computed as the actual cost to Defendants.

30. The ICA does not identify "Reefer Fuel" (fuel for a refrigeration unit in the trailer) as a cost to be charged back to the driver.

31. Despite the fact that the ICA does not clearly identify reefer fuel as a charge back item to be deducted from Plaintiffs' compensation, Defendants adopted a policy and practice of deducting the amount of reefer fuel purchased by its drivers from their settlements.

32. In addition, even if Defendants could lawfully charge back the cost of reefer fuel, they received or should have received a refund or rebate of "road use taxes" paid by the drivers at the pump when the fuel was purchased. Defendants charged back to drivers the full amount paid for reefer fuel without deduction of the tax refunded, thereby violating the provision of paragraph 22 of the ICA allowing charge backs of only Defendants' actual cost.

33. Defendants have specified in an appendix to the ICA and charged back to the drivers amounts for Occupational Accident Insurance or Workers' Compensation without providing copies of those policies as required by 376.12(j) and ¶ 26 of the ICA and without providing documentation of the validity of those charges.

34. Plaintiffs, upon information and belief, allege that Defendants have charged back amounts exceeding the actual cost of this insurance in violation of ¶ 22 of the ICA, thereby further damaging Plaintiffs.

35. Upon information and belief, Defendants have charged back other costs not clearly specified in the ICA, charged back other amounts, including fuel purchased, in excess of actual cost and concealed those violations of law from Plaintiffs by refusing to provide required documentation.

36. Defendants violated 376.12(h) by charging back to Plaintiffs and other drivers items not clearly specified in the ICA and by charging back costs in excess of Defendants actual costs and Plaintiffs are entitled to damages for these violations under 49 USC § 14704.

## COUNT IV
### (Breach of Contract)

37. Plaintiffs incorporate all prior paragraphs by reference.

38. Defendants actions as alleged above in charging back costs not clearly specified in the ICA and in charging back amounts in excess of their actual cost is a breach of contract and Plaintiffs are entitled to damages for those breaches.

## COUNT V
### (Unlawful Failure to Account for Escrow Fund Charges and Excessive Charges to Escrow Funds)

39. Plaintiffs incorporate all prior paragraphs by reference.

40. Carriers subject to Department of Transportation Regulations may establish escrow funds under 376.12(k) for costs that will likely be incurred by owner-operators as long as the carrier complies with the provisions of that regulation.

41. Defendants maintain, or have maintained, escrow funds including:

   a. A per-day amount for the driver's lease/purchase payment to CNTS Leasing, LLC plus other charges that are only generally described in an Appendix to the Independent Contractor Agreement;

   b. A fuel tax fund computed currently at $.02 per mile.

   c. A tire fund currently computed at $.0145 per mile.

   d. A "Maintenance-Routine" fund currently computed at $.0349 per mile.

   e. A "Maintenance-Other' fund that was computed at $.01 per mile.

42. For a contract establishing an escrow fund to meet the requirements of 49 CRF § 376.12(k)(2) it must specify the specific items to which the fund may be applied and carriers are allowed apply amounts in each escrow funds only to the specified items.

43. Defendants routinely apply amounts in various escrow accounts to items which are not specified as expenses to be paid from that specific escrow fund.

44. Defendants are required by 376.12(k)(3) to provide regular accountings to each driver for all escrow accounts maintained but they have failed and refused to do so.

45. Upon information and belief, Plaintiffs allege that Defendants have made excessive charges to their escrow accounts and concealed those violations from Plaintiffs by failing and refusing to provide regular and proper accountings.

46. Defendants have violated the Truth-in-Lending regulations and damaged Plaintiffs by applying amounts in escrow funds to expenses not specified in the documents creating those funds, by refusing to provide regular accountings, by failing to provide copies of documents needed to verify the validity of charges and by withholding balances in these escrow funds due Plaintiffs and Plaintiffs are entitled to damages for these violations under 49 USC § 14704.

.

## COUNT VI
### (Breach of Contract)

47. Plaintiffs incorporate all prior paragraphs by reference.

48. Defendants breached their contracts with Plaintiffs by charging unauthorized items to escrow accounts, making excessive charges to escrow accounts and concealing their actions from Plaintiffs and Plaintiffs are entitled to damages for those breaches.

## COUNT VII.
### (Unlawful Charges to Truck Account)

49. Plaintiffs incorporate all prior paragraphs by reference.

50. Defendants are permitted to deduct from the escrow funds only money for "obligations incurred by the lessor" (Plaintiffs) and only for obligations "previously specified in the lease (the ICA)" under 49 CFR § 376.12(k)(6).

51. Buel unlawfully treats escrow accounts for fuel tax, truck lease purchase, tires, maintenance and its required $2,000.00 investment account as if they were one consolidated escrow account for payment of any truck expenses and unlawfully offsets balances in favor of a driver in those accounts against negative balances in other accounts.

52. In addition, Buel unlawfully charges items not incurred by the driver or specified in the ICA to the truck account.

53. When a driver resigns, is terminated or otherwise leaves Buel's employment prior to completing his lease/purchase contract with CNTS, Defendants release that driver's tractor to a new driver.

54. If a driver leaves Buel's employment with a negative balance in the truck account, that negative balance is carried forward to the truck account for the new driver.

55. The new drivers do not sign an agreement allowing Buel to charge them with the prior driver's expenses and Buel does not disclose that these expenses are being charged to the new driver unless and until that driver receives a statement of the account and those statements are provided only on an irregular basis.

56. Without contractual authorization or the consent of Plaintiffs, Defendants required them to purchase alternative power units selected and specified by Defendants and have them installed on their tractors.

57. Without contractual authorization or the consent of Plaintiffs, Defendants required them to have modifications done to their tractors including, but not limited to, the installation of speed control devices.

58. Defendants charged the cost of the alternative power units and the required modifications to the Plaintiffs' Truck escrow funds it consolidates into the Truck Account without contractual authorization and without Plaintiffs' consent.

59. Defendants' actions making deductions from Plaintiffs' escrow funds for the obligations of former drivers violates 376.12(k)(6) and has damaged Plaintiffs and Plaintiffs are entitled to damages for these violations under 49 USC § 14704.

## COUNT VIII
### (Breach of Contract)

60. Plaintiffs incorporate all prior paragraphs by reference.

61. Defendants breached their contracts with Plaintiffs by charging unauthorized items to the Truck escrow account, making excessive charges to the Truck escrow account and concealing their actions from Plaintiffs and Plaintiffs are entitled to damages for those breaches.

## COUNT IX.
### (Failure to Account for Fuel Tax Payment)

62. Plaintiffs incorporate all prior paragraphs by reference.

63. Plaintiffs as are other owner-operators must account for and pay fuel tax based on the mileage driven in each state. Taxes paid when fuel is purchased in a state are deducted from that liability but an overall return must be filed based on miles driven.

64. Defendant Buel maintains an International. Fuel Tax Agreement covering the 48 contiguous U.S. states and Canadian provinces and Buel assumes responsibility under Paragraph 26 of Independent Contractor Agreement for filing fuel tax returns for the drivers.

65. Defendant Buel has established a fuel tax escrow fund to cover fuel taxes owed by the drivers in the event that all taxes due are not paid at the pump.

66. Under 376.12(k) and Section 25 of ICA, Defendants are obligated to provide regular reports to drivers and to repay to drivers any net overpayment annually.

67. Defendants have failed and refused to provide the required accounting and have failed and refused to repay net overpayments thereby damaging Plaintiffs.

68. Defendants' actions in failing to account for fuel tax payments and failing to refund overpayments have damaged Plaintiffs and Plaintiffs are entitled to damages for these violations under 49 USC § 14704.

## COUNT X
**(Breach of Contract)**

69. Plaintiffs incorporate all prior paragraphs by reference.

70. Defendants breached their contracts with Plaintiffs by refusing to refund overpayments to their fuel tax accounts, making excessive charges that escrow account and concealing their actions from Plaintiffs and Plaintiffs are entitled to damages for those breaches.

## COUNT XI
**(Breach of ICA – Rejection of Loads)**

71. Plaintiffs incorporate all prior paragraphs by reference.

72. Plaintiffs and other Buel drivers are guaranteed the right under ¶ 6 of the ICA to decline any "brokered" load.

73. If Plaintiffs were truly independent contractors they would have the right to decide for themselves on a day-to-day or load-to-load basis whether they would carry any freight offered.

74. Defendants have a practice of routinely violating Plaintiffs' rights by forcing them to carry loads that they would otherwise decline because those loads would be unprofitable.

75. Defendants use various methods of forcing Plaintiffs to carry any load assigned including threats of discharge, cutting off fuel cards and daily expense advances and openly submitting slanderous information to Hire Right, a company that provides the widely used "DAC Report" records for a driver's history to employers.

76. Defendants breached their contracts with Plaintiffs by forcing them to accept unwanted loads and have additionally damaged Plaintiffs by forcing them to carry loads at a loss against their will and Plaintiffs are entitled to damages for those breaches.

## COUNT XII.
### (Breach of ICA – Discharge and Threats of Discharge)

77. Plaintiffs incorporate all prior paragraphs by reference.

78. Defendants have engaged in a pattern and practice of retaliating and discriminating against drivers, including Plaintiffs Robert Brown and Eddie White, who attempted to defend their contractual or statutory rights or criticized Buel's treatment of its drivers by threatening their jobs and/or discharging them without notice and without cause in violation of the ICA.

79. To enhance the chilling effect of discharging drivers without cause in violation of their contracts, Defendants have sought to further intimidate other drivers into not asserting their statutory or contractual rights and not daring to leave Buel's employment by filing false and slanderous DAC Reports with Hire Right and perhaps other similar organizations with the intention of keeping those discharged drivers and drivers who quit from finding employment in trucking.

80. Drivers who have been discharged without cause in violation of their contractual rights are entitled to damages for breach of their contracts.

81. Drivers who have been deterred from leaving for better paying positions as the result of the chilling effect of Buel's actions as alleged above are entitled to damages for breach of the covenants of good faith and fair dealing in their contracts.

82. The discharges, threats and intimidation alleged above affect all members of the proposed class.

## COUNT XIII
### (Retention of Alternative Power Units)

83. Plaintiffs incorporate all prior paragraphs by reference.

84. As alleged above Defendants forced Plaintiffs to purchase and pay for alternative power units and have them installed on their tractors.

85. Those alternative power units were the property of the drivers who were required to purchase and install them and they were not modifications to the truck that the lessor, Defendant CNTS Leasing, LLC was entitled to retain if the lease was cancelled.

86. When leases were cancelled after those units were installed, and even after those units were paid for by the drivers, Defendants retained and refused to return those units.

87. By failing and refusing to return those units, Defendants converted Plaintiffs' property and are liable to Plaintiffs for damages for their actions.

## COUNT XIV
### (Unjust Enrichment)

88. Plaintiffs incorporate all prior paragraphs by reference.

89. Plaintiffs' claim for unjust enrichment arises under the common law.

90. The class period for this claim extends back three years from the filing of the complaint.

91. Defendants subjected Plaintiffs and the proposed class members to such total control over their working conditions that their status as independent contractors was completely destroyed and they were deprived of the opportunity to function as independent businessmen with the opportunity to make decisions that allowed them to meaningfully participate in the rewards of owning an independent business. Examples of Defendants control include:

- Discipline and discharge of their drivers as if they were "at will" employees;
- Forcing its drivers to accept unwanted and unprofitable loads,
- Requiring their drivers to purchase and install unwanted equipment;
- Requiring compliance with company rules on specific education, training, accident procedures, clothing and personal hygiene;
- Imposing a progressive discipline policy;
- Requiring the purchase of tires and other items from specific vendors;
- Requiring their drivers to purchase insurance through them; and
- Dictating the details of maintenance and modifications to the tractors.

92. Throughout the course of their relationship Defendants' control of Plaintiffs' business and the denial of the freedoms and privileges inherent in independent contractor status have conferred substantial financial benefits on the Defendants. These benefits were the shifting of expenses and costs that would have been the responsibility of the Defendants in any employer-employee relationship. These expenses include but are not limited to:

- The cost of purchasing and/or leasing the tractors used by Defendants;
- Operating expenses, such as fuel, oil, tires, business taxes, cleaning, insurance, registration and tolls;
- Vehicle maintenance;
- Vehicle licensing;

> • Payments to Defendants' various escrow fund accounts;
>
> • Liability insurance premiums and payments;
>
> • Workers' compensation insurance premiums and payments; and
>
> • Overtime compensation for members of the class also worked more than forty

(40) hours a week, but were not compensated at an appropriate rate given their correct legal status as employees.

93. Defendants accepted, appreciated and profited from shifting these expenses onto the Plaintiffs and the proposed class. Under these circumstances it would be inequitable for Defendants to retain these benefits without payments to Plaintiffs and to the class for these expenses.

## CLASS ALLEGATIONS

94. Plaintiffs brings this case on behalf of the following class:

> All current and former Buel, Inc. drivers who have had Independent Contractor Agreements or other owner-operator agreements with Buel, Inc. from four years prior to the commencement of this action through the present date. The named Plaintiffs fit within this description.

95. All class members share an interest in ascertaining: (1) whether Defendants have violated the Truth in Lending regulations in determining their compensation and any applicable deductions or charge backs; (2) whether Buel, Inc. has violated the rights of independent contractors by threats, discharge, and forced work assignments; and (3) whether they should be treated as employees or as independent contractors.

96. The named Plaintiffs will fairly and adequately represent the class. The named Plaintiffs are members of the class, they have no interest antagonistic to the members of the class, and they have retained a lawyer experienced in class action litigation to prosecute the case.

97. The class is large, numbering more than one hundred, at least. Accordingly, joinder is impracticable.

98. Nevertheless, the class is not large enough to render class treatment unmanageable.

99. Pursuant to Fed. R. Civ. P. 23(a)(2) and (a)(3), there are questions of law or fact common to the class, including, but not limited to:

   a. Whether Defendants had a pattern of unlawfully refusing to provide Plaintiffs and other class members with copies of rated freight bill or other documents needed to verify that they received their contracted for compensation;

   b. Whether Defendants' policies and practices resulted in the denial of compensation due Plaintiffs;

   c. Whether Defendants policies and practices resulted in charging unauthorized items and excessive amounts as charge backs;

   d. Whether Defendants have unlawfully failed to properly account for escrow funds withheld from the drivers' settlements;

   e. Whether Defendants have a pattern and practice of forcing drivers to accept unwanted and unprofitable loads;

   f. Whether Defendants have a pattern and practice of threatening and discharging drivers in violation of their contracts;

   g. Whether Defendants have a pattern of filing false DAC reports;

   h. Whether Plaintiffs and proposed class members had the requisite independence and discretion to be classified as independent contractors.

   i. Whether the uniform acts of Defendants converted its drivers from independent contractors into employees.

100.    The claims of Plaintiffs are typical of the claims of the members of the proposed class as a whole and are based on and arise out of identical conduct by Defendants.

101.  Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in class action litigation. Plaintiffs will fairly and adequately represent the interests of the members of the class.

102.  The prosecution of separate actions by individual members of the class would create a risk of establishing incompatible standards of conduct for Defendants.

103.  Defendants' actions are generally applicable to the class as a whole, and Plaintiffs seek remedies with respect to the class as a whole.

104.  The common questions of law and facts enumerated above predominate over questions affecting only individual members of the class, and a class action is the superior method for fair and efficient adjudication of the controversy.

**WHEREFORE,** Plaintiffs, individually and on behalf of others similarly situated, prays for the following relief:

A. An Order permitting them to give notice of this action to all persons who fit within the described class;

B. An Order certifying the class as described with the named Plaintiffs as class representatives;

C. An order that Defendants provide Plaintiffs and all class members with an accounting of all amounts of compensation attributed to them for all loads hauled within the period covered by this action supported by copies of or access to rated freight bills, load confirmation sheets or other similar documentation as required by the Truth-in-Leasing regulations;

D. An Order that Defendants provide Plaintiffs and all class members with an accounting of all transactions involving deductions from income including all charge backs deducted from income supported by documentation necessary to determine the validity of those charges;

E. An Order that Defendants provide Plaintiffs and all class members with an accounting of all charges against their escrow funds supported by documentation necessary to determine the validity of those charges;

F. A judgment against Defendants and in favor of Plaintiffs and other class members for restitution and disgorgement of all amounts improperly or unlawfully withheld from their

income, unlawfully or improperly deducted from their income, or unlawfully or improperly charged to their escrow funds;

G. A judgment against Defendants and in favor of Plaintiffs or class members who were discharged or deterred from obtaining more profitable employment in the amount of their lost earnings;

H. A judgment against Defendants and in favor of Plaintiffs or class members who worked in excess of 40 hours per week in the amount of their unpaid overtime compensation;

I. A judgment against Defendants and in favor of Plaintiffs and class members requiring Defendants to reimburse and/or indemnify Plaintiffs and class members for Defendants business expenses that the Plaintiffs and class members have paid;

J. An award of attorneys' fees, plus the costs and expenses of this action;

K. Prejudgment interest; and

L. All other legal and equitable relief to which Plaintiffs and the class are entitled.

This the 20th day of January, 2011.

|  |  |
|---|---|
| MELVIN HUTSON, PA<br>233 N. Main Street, Suite 200<br>Greenville, SC  29601<br>Telephone: (864) 241-4000<br>Facsimile:  (864) 421-0441<br>Email:  mrhlaw@bellsouth.net | /s/ Melvin Hutson<br>Melvin Hutson (Fed. Bar ID 2023)<br>Attorney for Plaintiffs |